We're going to go on to case number 4, 22-13-14, Scott v. Hepp. Good morning, Your Honours, and may it please the Court, Shela Nguyen for Petitioner-Appellant Sakajust Scott. I'd like to address two issues today. First, the Wisconsin Court of Appeals' decision was unreasonable because it deployed a per se rule, rather than conduct a proper, strict analysis on the facts of this case. And second, suppression on Fifth Amendment grounds was an argument foreshadowed in existing case law. Objectively reasonable counsel would have made that argument. The state court rejected Mr. Scott's claim based on his prior decision in State v. McMahon, which stated that ineffective assistance of counsel claims should be limited to situations where the law or duty is clear. Such a demand for a settled rule, no matter the circumstances of the case and point of law, is contrary to Strickland. This one, forgive me, but has Scott ever produced evidence either in the form of testimony or an affidavit from himself or any of his lawyers that he told his lawyer that he invoked his right to counsel upon arrest? I mean, he's had some time now to develop this record. I saw nothing in the briefs indicating that any of his four lawyers even knew, as a factual matter, that this was a possible ground for suppressing his videotaped statement. Your Honor, Mr. Scott produced affidavits from two eyewitnesses that witnessed the arrest, and he was never allowed a hearing to establish which of his attorneys he informed because his post-conviction counsel did not sufficiently plead the issue. And so Mr. Scott has never had an opportunity to develop that record and to put those facts at issue. Well, is there any record evidence from the lawyer who decided to seek suppression on the ground that the videotaped statement was involuntary? Has that lawyer, for instance, ever been asked to explain his decision-making process? No, Your Honor. I mean, do we even know if it was a strategic decision? Your Honor, we don't have those facts in the record, but what we do know is that counsel recognized how important it was to suppress this videotaped confession. Counsel attempted to suppress this videotaped confession on the grounds of intoxication and involuntariness, all the while he had a strong constitutional claim available to him, which was an argument that was foreshadowed in existing case law. This court has said in shot that in some cases trial counsel can be deficient for failing to make an argument that is foreshadowed in existing case law. That's exactly what happened here. Trial counsel pursued a weaker argument, and instead of making this constitutional argument that was supported by a decision in the highest court of the jurisdiction, he leaned on intoxication. There was no strategic justification for not attempting the strongest argument possible to suppress this confession. And, Your Honor, turning back to the Wisconsin Court of Appeals decision, which is the decision under scrutiny here today, the state cites a bevy of cases for the proposition that counsel can never be deficient for failing to litigate an unsettled issue, but all of those cases are distinguishable, and that principle is contrary to Strickland. That's why we're here today. This court, as recently as 2021, reaffirmed the principle of Shaw in the Bridges case that there are some circumstances in which defense counsel may be obliged to make an argument that is sufficiently foreshadowed in case law. Counsel failed to pursue this argument on which the Supreme Court of Wisconsin was evenly split. Three justices had said that a time of arrest invocation of counsel is sufficient, but counsel failed to make this argument. And he went with the weaker suppression argument based on involuntariness, but under this court's decision in Shaw, a trial counsel was obligated to raise such an argument, even if it had less than 100% chance of success, and even if the point of law was not settled. That's exactly what the Wisconsin Court of Appeals failed to evaluate. It did not apply Strickland in its decision. It just held on a per se rule that trial counsel could not have been deficient. But objectively reasonable counsel in Wisconsin on a simple Westlaw search would have landed on the Hambly decision. The facts of Hambly are strikingly similar, and there the Wisconsin Supreme Court was evenly split on the issue. Three justices had provided support for Mr. Scott's argument. One justice abstained. Objectively reasonable counsel would have pursued this avenue of suppression, but trial counsel did not do so. Ms. Wynn, can you address the topic of procedural default? And is there a procedural default problem with this case? Your Honor, the district court's certificate of availability did not address that issue, and it's limited to the Fifth Amendment suppression argument. The state hasn't briefed it, and so the record isn't fully developed on that issue. I think at this point, what's before us and the record is developed for us is on that Fifth Amendment grounds and trial counsel's failure to make that argument. Thank you. So trial counsel had two independent reasons. One was the foreshadowing in Hambly, and the second was that the facts of this case are not like the other Miranda line of cases. This is not a situation where there's a break in custody, where the suspect is not under custody. There's no question about that. In this case, unlike Lebron, unlike Marilyn B. Shatner, Mr. Scott was arrested at gunpoint, taken forcibly to the police station, and held for questioning. He was under arrest, and his interrogation was imminent. Trial counsel failed to even argue that. He didn't have to make an argument that was a sure-shot winner. He just had to make an argument that would have granted a strong argument that was available to him. And again, Your Honor, this case is like Shaw. Overlooking a strong argument in favor of a frivolous one or overlooking an obvious argument can be deficient. That's exactly what happened here. If the court has no more questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. Abigail Ponce on behalf of the state and the respondent. May it please the court. So the state's position, the respondent's position in this case, is quite simply that Mr. Scott doesn't deserve or is not entitled to habeas relief because the state court didn't get it wrong. More specifically, in other words, Mr. Scott just can't make the requisite showing under AEDPA to warrant federal habeas relief. And he can't do that because the state court decision in this case is not in conflict with any clearly established U.S. Supreme Court precedent. And it's our position that that's where this case should end. So we don't even need to get to the application of Strickland. Ms. Potts, same question I had for Ms. Winn. The concept of procedural default and where does that stand in this case? It's a good question and it's actually a complicated one to answer in part because of the procedures at the state level. So it is the state's position that Mr. Scott did default this ineffective assistance claim the first time he appealed. And that's what the state Supreme Court held that and then went on to explain a separate and independent basis why his claim fails and could fail without a hearing, what we call a Mockner hearing in Wisconsin. And at that point, this claim was defaulted. Now, Mr. Scott did then bring his habeas action here, get it stayed so that he could go back and exhaust his claim of ineffective assistance of post-conviction counsel. And that's when all of a sudden that default comes into more question because what he did during that is he brought up this claim that his post-conviction counsel was ineffective. And the way that the state court handled resolution of that case makes it a little unclear whether or not that default sticks because the court basically said you can't come back here and argue the same issue twice. And that decision is really on the underlying ineffective assistance of counsel claim on an unsettled area of law, a Fifth Amendment, unsettled area of Fifth Amendment law. So the court basically referenced back to that more substantive part of its first decision. Now, from the state's perspective, you could still consider that a procedural default because the court of appeals, the state court of appeals rejected his second appeal, rejected his second reasoning, which is a state rule that you can't argue that same thing twice, that underlying issue twice. But that is not clear under this court's precedent whether or not that is considered an independent and adequate state law grounds, which would preclude federal habeas. And honestly, we don't take that up on appeal. I got this case on appeal. I didn't argue that on appeal because I think this case can so easily be resolved under AEDPA, and it's a clearer way to finish the case. I think the district court in this case got it right, correctly applied the double levels of deference, and I think that's one thing that Scott's briefing really confuses. The district court did not get this question wrong, even though Scott claims they did. The question is not whether or not his attorney unreasonably did not pursue this argument. The question is whether or not the Wisconsin court of appeals decided this case in direct conflict with U.S. Supreme Court precedent, not this court's precedent. And that's what the district court did. It looked at that correct AEDPA question. So we think the district court got this right. We also think that the Wisconsin court of appeals decision is right. I don't at all agree that the Wisconsin court of appeals decision conflicts with Strickland or is an unreasonable application of Strickland. In fact, the decision, when you look at it, expressly cites Strickland, so we know that they get over that hurdle, which is that they cite the correct law, the correct standard for ineffective assistance of counsel in such a case, because this is an ineffective assistance of counsel case. So the court cited Strickland, cited both prongs of Strickland, and what the court then ultimately did is not apply a per se rule. The court went on to say, what is the claim that Mr. Scott says he wanted his attorney to make? What is the current status of the law around that claim? And then it expressly looked at the nature of his arrest and said, that's not a claim that he could make at that time. So his attorney was not, he can't show that his attorney was deficient. And none of that conflicts with Strickland, let alone directly conflicts with Strickland. The per se argument they make, I think, is a way to try to find a workaround around that. This is not a per se rule. This was the court acknowledging a well-recognized limitation of the deficient performance prong of Strickland, which is you can't say that someone is deficient for doing something that is frivolous or very unclear or unsettled. Now, this court has discussed the idea of something being sufficiently foreshadowed. That is not U.S. Supreme Court precedent. So that is not something that conflicts with, even in the application of Strickland, the state court of appeals decision doesn't conflict on that idea with U.S. Supreme Court precedent. So I don't think that gets us beyond AEDPA. None of Scott's arguments get us beyond AEDPA deference, basically. And then I would just kind of turn briefly, even if this court were to get beyond AEDPA deference, there's just a lot of problems with the way that Scott is characterizing the law in this case. There is no evidence in this record that he ever told anybody that he asked for his attorney at the time of arrest. We now, after he's convicted, have two affidavits. Because of the nature of the claim that he says he wants his trial counsel to make, because of the unsettled, unclear nature of whether that's even a right he had, he didn't even get a Mockner hearing on this, so we've never even asked his attorney, did he ever mention this to you? So we don't know that. That's not in the record. And I acknowledge that from the state's perspective, we have to kind of assume that he did, because we can only assume when we're dismissing, when a state court is dismissing a post-conviction motion without a hearing, you need to go off of what he's alleging. And he does have his affidavits saying things. But I would say that when we look at those affidavits, all the affidavits say is that he was arrested and he mentioned he wanted an attorney. They don't talk about any conversation between him and Attorney Playstead or viewing the video or anything like that. Nothing. And they wouldn't know, because these are affidavits from his friends who were there when he was arrested, basically. But one thing I will note is that opposing counsel repeatedly criticizes trial counsel for making a frivolous motion to suppress instead of a stronger one. And I think there are just flaws in both of those characterizations. The motion to suppress that was actually made alleged that he was so incapacitated he did not know what he was doing. That is only frivolous. I mean, a suppression or a confession should be suppressed if a defendant is so drunk or intoxicated they don't know what they're doing. So that claim is not frivolous unless he's lying about it. And he went and he testified at the suppression hearing, and the court did not believe him. And really made a point of saying on the record that it doubted the veracity of his testimony. This is Judge Rothstein. Yeah, this is the post-conviction judge. So I think it's unfair to say that that was the trial attorney's fault that that might be frivolous when his client was the one testifying to all of that. Now, secondly, I would say that there really is nothing to show that he knew that this was a viable claim. So even if we get beyond epidephrans, which I don't think we need to do, he simply can't show deficient performance on this issue. And I think it was properly resolved at the state because of the nature of this claim and the nature of the facts in the record. I make a footnote in our brief. Just something that I think is worth considering is that in his suppression hearing testimony, Mr. Scott acknowledged that he had been arrested several times before. Never questioned after arrest. He had never been questioned by anybody after his previous arrest and never been read Miranda rights. So I think it's very unreasonable to characterize what happened in his case here as a situation where he knew that interrogation was imminent the minute he was handcuffed. That's just not supported by his own testimony. It's also not supported by any of the case law that Scott cites. And so I guess I would just say that Scott hasn't identified any case law that says he could effectively invoke his Fifth Amendment right to counsel at the point that his affidavits say he did. And I think with that in mind, it was absolutely proper for the state court to say, you can't show deficient performance to the level that you need to. Constitutionally deficient performance. But again, I guess I would just close by saying, I think we can handle this at the EDPA level and that's where the court should leave it so that we have a clear precedent on that. Thank you very much. Thank you, Ms. Potts. Ms. Wynn. Thank you, Your Honors. Just briefly, the state acknowledges that it has waived procedural defaults, so I think that takes care of that question. I'd like to address counsel's explanation of the Wisconsin Court of Appeals decision. Yes, the Wisconsin Court of Appeals cites the proper legal standard, but then it fails to apply it. It says twice, and you can look at this at RSA 27 and 29, it says twice that ineffective assistance of counsel claims should be limited to situations where the law or duty is clear. That's a per se rule that's contrary to Strickland. So that's about the Wisconsin Court of Appeals decision. Second, counsel made references to no case supporting Scott's, Mr. Scott's argument that when he said he invoked his right to counsel, that he was guaranteed right to counsel then. Counsel ignores the time of arrest argument, and that's the argument that was foreshadowed in Hamlin. That's the argument, that's the separate argument, not just that interrogation was imminent, but a separate argument that at the time of arrest when he invoked his right to counsel, he should have been provided a lawyer. Counsel did not address that argument, and I think that is the piece that was foreshadowed in Hamlin, and trial counsel or objectively reasonable counsel would have included that argument. And as to whether the seeking of suppression on intoxication grounds, the evidence for that was weak as trial counsel acknowledges. And you can see that in appendix, additional appendix 63 to 64. Trial counsel acknowledged that Mr. Scott did not appear drunk or intoxicated. So he's faced with, on the one hand, with the video showing that his client may not be intoxicated. On the other hand, he has a claim of a Fifth Amendment right to counsel being violated. He picks the weaker argument and completely forgoes the strong constitutional argument. For these reasons and those stated in our briefs, Your Honor, unless the court has no further questions, Mr. Scott respectfully requests that the district court judgment be vacated and this matter remanded to the district court with instructions to grant a writ of habeas corpus. Thank you. Thank you. Ms. Wynn, you were appointed by the court. Yes. And you have the sincere and deep thanks of the court and this panel for the very fine representation that Jones Day has given to Mr. Scott. Thank you very much. And, of course, we thank Ms. Potts as well for the fine presentation that she has given on behalf of the government. Thank you both so very much. Thank you, Your Honor. And the case will be taken under advisement. Thank you all.